# Connelly's Appeal.

1. A. was the executor of an estate, and appointed B. his agent, to receive a debt due the testator. B. got the money and kept it. A. filed his account, and did not charge himself with the money so collected, which was confirmed and he discharged, and B. appointed administrator *de bonis non*. C., an heir, filed this bill of review against A., to compel him to account for the money received by his agent. *Held*, that the bill cannot be sustained.

2. A discharged executor or administrator is not to make distribution, but to pay over the fund to his successor.

APPEAL from the decree of the Orphans' Court of *Somerset county*.

Bernard Connelly died testate, appointing George Chorpenning and M. A. Sanner, his executors. While acting as executors, Chorpenning and Sanner executed a letter of attorney as executors aforesaid, to F. M. Connelly to collect, recover, receive and receipt of, and from Edward Connelly, of Utica, in the State of Ohio, all such sums of money as may be due from said Edward Connelly, to the estate of Bernard Connelly, deceased. This power was dated 15th May, 1850. On the 13th of June, 1850, said F. M. Connelly, by virtue of the authority given him, by said executors, collected, received and receipted for $1370.28, from Edward Connelly. On the 20th of July, 1850, Sanner, as acting executor, filed his account, in which he did not charge himself with the money received by their agent. This account was confirmed and executors discharged with the usual order, on the 15th November, 1850.

F. M. Connelly, who had been the agent of the executors as aforesaid, was then appointed administrator *de bonis non cum testamento annexo*. On the 26th June, 1852, he filed his account, in which there is no charge for the money collected from Edward Connelly, as agent of the former executors. He was also discharged with the usual order.

Upon this state of facts, E. S. Connelly, a son of testate, filed his bill, setting forth that he was an heir-at-law of said estate, that M. A. Sanner, and George Chorpenning, within five years, had filed an account, in which they omitted and neglected to account for $1079, or thereabouts, money which they by their agent collected from Edward Connelly, prior to the filing of their account; and praying for a review of their account.

The executors by their answer filed, admit the facts alleged against them, but claimed to be protected because that their ac-

count had been confirmed, they discharged, and F. M. Connelly, who had been their agent, had been appointed administrator *de bonis non*, and had the money in his hands, and that he was the proper person to be called upon to account for it.

After hearing, the court below made the following decree:

"The only point raised on this record, is to the responsibility of Sanner, to account for the moneys received by the agent in fact, under the power of attorney, from Edward Connelly. It is not charged in this bill that the agent paid over this amount to his principal, nor is that the ground on which the counsel insist upon having the account opened. They say that the money was received by F. M. Connelly, before Sanner filed his account; that the payment to the agent was a payment to the principal, and never having accounted to the estate for the sum thus received by him, he cannot now be excused from so doing, by the fact that the agent became his successor in the administration.

"We think that, as the agent had the moneys in his hands, when he was appointed the successor of the accountant, who was ordered to pay over all moneys in his hands to his successor, held by him as administrator, that it was not necessary for the accountant to receive the amount with one hand and return it with the other, so as to have a formal paying over; that he was acting so much within the decree, in permitting the successor to retain it. The money then belonged to the agent, as administrator, and if Sanner had commenced an action at law, to recover the money from his successor, the decree would have defeated him. Even if the agent was the debtor to the estate in that sum when he took upon himself the duties of the administration, he was legally authorized to hold his moneys as against his principal; and although, as is alleged, Sanner was charged with the sum when he filed his account, or any time before his discharge, the appointment of the agent to the duties of the principal, discharged that accountability. The proceedings are, therefore, dismissed."

From which decree petitioner appealed, and assigned the same for error.

*Baer*, for petitioner, referred to 2 Jones, 260; *Neisley's Appeal,* 1 Barr, 457; 5 W. 90.

*Edie, contra.*

The opinion of the court was delivered by

BLACK, J.—A. was the executor of an estate, and appointed B. his agent, to receive payment of a debt due to the testator. B. got the money and kept it. A. filed his account, probably without knowing that the debt had been paid to his agent, and

did not charge himself with it. His account was confirmed—he was discharged from the trust, and B., the agent who had received the debt in question, *was appointed administrator de bonis non*. C., who is an heir and distributee, brings this bill of review against A., to compel him to account for the debt received by his agent and successor.

If this money had been actually received by A., the first executor, and charged against him in his account, it would have been his duty to pay it to his successor in the trust. That successor already had it, and the judge of the court below said most truly, that it was not necessary for him to pay over with one hand and receive back with the other. Every claim that A. ever had upon B. for the money in question, was extinguished by the discharge of the former and the appointment of the latter as administrator. Why did the parties interested not pursue B., the administrator *de bonis non* ? Nobody can deny that he was both legally and equitably bound for it. But they pass him by, and attack a man who, in point of fact, never received it ; one who did his duty by leaving it at the very place where he was ordered by the court to put it. If this account were opened, and A. were charged with the sum claimed by the petitioner, he would be compelled to suffer a dead loss of the whole amount. He could not possibly recover from B., who has a most undoubted right to retain it—a right conferred upon him by virtue of his office as administrator, and by a special decree of the Orphans' Court. The appellee would thus be pressed on one side by a decree commanding him to pay a specific sum of money, and on the other by a different decree, forbidding him to touch it. But suppose we could get clear of this difficulty, or shut our eyes to the injustice of it, what good would it do to the distributees ? To charge A. with the money would not entitle them to get it from him. It is well settled, that a discharged executor or administrator is not to make distribution, but simply to pay over the fund to his successor. They must resort to B. at last. The law abhors this travelling in a circle, which brings the parties around to the same place they started from, without any result except delay, weariness and the payment of unnecessary tolls.

The case of *Little* v. *Walton*, 11 Harris, 164, is conclusive of the principle on which this one turns.

Decree affirmed.